# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CANDACE SEIDL,** *on behalf of herself and all others similarly situated*, <br><br> Plaintiff, <br><br> *vs.* <br><br> **ARTSANA USA, INC. (d/b/a Chicco)**, <br><br> Defendant. | Civil Action File No.: 5:22-cv-2586 <br><br><br> **JURY TRIAL DEMANDED** |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Candace Seidl, on behalf of herself and all others similarly situated, brings this class action lawsuit against Artsana USA, Inc. (d/b/a Chicco) ("Defendant," "Artsana" or "Chicco"), and alleges the following based upon her personal knowledge and experiences and— where indicated—upon information and belief, as well as based on due investigation conducted by her attorneys.

## INTRODUCTION

1.      While virtually no one would take issue with the statements that child restraint systems play a vital role in child safety and that they "are necessary safety devices that should be affordable and toxic free,"[1] Artsana—despite long being aware of the potential health issues—

---

[1]      *See* Erica Bloom, Melissa Cooper Sargent, Jeff Gearhart and Gillian Miller, *Toxic Inequities: How an Outdated Standard Leads to Toxics in Low-Cost Children's Car seats*, published by the Ecology Center and its Healthy Stuff Program (April 2022) (hereafter, the "Toxic Inequities Report"), at 2, available at https://drive.google.com/file/d/1RRTpwKnvDZ3wgZlnBDk0U3qpJn5MjP7M/view (last visited June 27, 2022) (noting that in 2017 car seats saved the lives of over 320 children aged four and younger).

intentionally fails to disclose that certain of its most popular car seat products contain hazardous chemicals such as flame retardants ("FRs") and/or per- and polyfluoroalkyl substances ("PFAS").

2.        The term flame retardants subsumes a diverse group of phosphorus- and bromine-containing chemicals which are added to manufactured materials, such as plastics and textiles, and surface finishes and coatings.  These chemicals are linked to developmental disorders, cancer, endocrine disruption, diabetes and other serious medical issues.[2]

3.        The term PFAS, or per- and polyfluoroalkyl substances, refers to a class of compounds often used to make products water-, stain- and grease-resistant.  PFAS chemicals have been used in industry and consumer products for several decades, and are linked to cancer, thyroid disease, decreased immunity and high cholesterol, among many other health issues.[3]

4.        Simply put, there is ***nothing*** that parents, guardians and caretakers value more than keeping their babies, infants and toddlers safe and healthy.  That is why considerable care understandably goes into selecting diapers, clothes, mattresses and car seats, among many other products.  No parent wants those carefully chosen items to include chemicals that could increase the likelihood that their child might face lifelong (and, in some instances, life threatening) challenges like cancer, diabetes, heart disease, learning and developmental disabilities and asthma.[4]

---

[2]        *See* Tom Perkins, THE GUARDIAN, *Over half of child car seats have toxic flame retardants and PFAS - US study* (May 5, 2022), available at https://www.theguardian.com/environment/2022/may/05/us-child-car-seats-pfas-toxic-flame-retardants-study (last visited June 27, 2022).

[3]        *See id.*

[4]        *See* Clean and Healthy New York, *The Mattress Still Matters: Protecting Babies and Toddlers from Toxic Chemicals While They Sleep* (July 26, 2020), available at

5.      The potential health consequences of these toxic chemicals are severe, particularly in children's products because these toxic chemicals are endocrine-disrupting chemicals meaning they disrupt proper functioning of hormones and can therefore have a profound impact on young, still-developing bodies.[5]

6.      The use of these toxic chemicals in car seats is especially pernicious because FRs are usually not bound to the foams and fabrics to which they are applied, and PFAS—typically applied to products for their water and stain repellant properties—can also leach from fabrics so these chemicals migrate out and then are either absorbed or ingested by vulnerable children, who obviously spend a significant amount of time in their car seats.[6]

7.      Notably, young children are especially vulnerable and the long term effects of these chemicals are potentially severe because their brains and bodies are still developing, as well

---

https://static1.squarespace.com/static/5fa197d3a325783e2e6f7b89/t/6115778ad9b10a40484a2ec6/1628796815181/The+Mattress+Still+Matters+7-24.pdf (last visited June 27, 2022) (stating that "[p]arents should be confident that items made for babies are free of such harmful chemicals, but that is too often not the case"); Shannon Woods, NATURAL BABY MAMA, *2022 Best Non-Toxic Car Seats Without Flame Retardants*, available at https://naturalbabymama.com/the-best-non-toxic-car-seats-without-flame-retardants/ (stating that "[s]afety is always the priority, but having our children sit in chemical flame retardants has been a concern since day one") (last visited June 27, 2022).

[5]      *See* Grace van Deelen, *Kids' Products Labeled 'Green' May Contain Toxic PFAS Chemicals*, CHILDREN'S HEALTH DEFENSE (May 5, 2022), available at https://childrenshealthdefense.org/defender/kids-products-green-toxic-pfas-chemicals-ehn/ (last visited June 27, 2022); *see also* Toxic Inequities Report at 2 (noting that a number of FRs are known endocrine disruptors, while some PFAS are likely carcinogens and immune disruptors).

[6]      *See id.* (noting that children and adults are exposed to FRs and PFAS through breathing and ingesting dust, as well as skin contact); *see also Hazardous Chemicals Found in Children's Car Seats* (June 4, 2015), available at https://toxicfreefuture.org/hazardous-chemicals-found-in-childrens-car-seats/ (last visited June 27, 2022).

as the fact that their skin is thinner.[7]  That is, an infant's skin is much more permeable than adult

skin because it has fewer elastic fibers therefore it acts like a sieve allowing more substances to

pass through than adult skin does.[8]  Furthermore, the surface area of a baby's skin is between three

and five times greater than an adult relative to body weight.  Thus, since the skin can absorb

irritants, allergens and bacteria from the environment, a substance that manages to penetrate the

skin ends up being considerably more concentrated in a baby's body.

        8.       In short, the research is clear—and it is not new[9]—that even very low levels of

FRs and/or PFAS can be toxic to humans, particularly infants and toddlers.[10]

        9.       Unfortunately, while *some* advancements have been made by *some* car seat

manufacturers, considerable work remains to be done.  Independent testing has revealed that while

---

[7]      Ruben Diaz, *New Study Reveals Toxic Chemicals in Vast Majority of Children's Car Seats* (Dec. 2, 2018), available at https://ceh.org/latest/press-releases/new-study-reveals-toxic-chemicals-in-vast-majority-of-childrens-car-seats/ (last visited June 27, 2022) (stating that "[t]hese chemicals pose the greatest risk to babies while their bodies and organs are still developing").

[8]      *See* https://www.seventhgeneration.com/blog/what-you-need-know-about-your-babys-skin (noting that "[a]n infant's epidermis is three to five times thinner than an adult's and is made up of smaller cells. This increases the absorption of water and other substances into the body.") (last visited June 27, 2022).

[9]      The Ecology Center "has been testing children's car seats for over ten years," and making car seat manufacturers like Artsana aware of its finding (not to mention has invited the manufacturers to participate in various surveys).  *See* Melissa Cooper Sargent & Jeff Gearhart, *Making the Grade: How Children's Car Seat Manufacturers Measure Up on Chemical Policy and Transparency*, published by the Ecology Center and its Healthy Stuff program (July 2019) (hereafter, the "Transparency Report"), at 6.

[10]     *See PFAS Forever Chemicals (also PFOA, PFOS)*, BREAST CANCER PREVENT PARTNERS, available at https://www.bcpp.org/resource/pfas-forever-chemicals-pfoa-pfos/#:~:text=PFASs%20are%20often%20called%20'forever,followed%20by%20PFHxS%20and%20PFNA. (stating that "[w]omen, particularly pregnant women, and children are most vulnerable to the potential health effects of PFAS chemical exposure") (last visited June 27, 2022).

car seat manufacturers have eliminated a number of well-known halogenated FRs, they are often substituting phosphorous-based FRs whose toxicity profiles are mostly unknown.[11]

10.     Many recent reports evidence that more than half of children's car seats sold in the United States still contain hazardous chemicals such as FRs (although the types of FRs have changed) and/or PFAS.[12]

11.     Thus, the consuming public is often in a "no win" situation as car seat manufacturers rush to tout how "green," "safe" or "quality" their car seats are, but they do not disclose when those car seats are manufactured with toxic chemicals that could cause life-changing (and potentially threatening) illnesses.[13]

12.     Artsana is sadly no exception.   Throughout its marketing and advertising materials, Artsana wants to appear as if it is taking the issue of use of toxic chemicals in its car seat products seriously, and it certainly wants to proclaim broadly when it does actually manufacture a flame retardant and/or PFAS car seat, but it simply has not made ***any*** disclosure regarding the use of FRs and PFAS free in its most popular child car seat product, the KeyFit 30

---

[11]     *See* Toxic Inequities Report at 3.

[12]     Overall 55% (12 of 22) of tested U.S. car seats contained flame retardant chemicals in major components.  All 12 of these seats contained phosphorous-based FRs in the upholstery. 21% of tested car seats (4 of 19) had water- and stain-resistant fabrics likely containing PFAS, based on testing for total organic fluorine.  Of the four strollers, 2 had likely PFAS, as did their matching car seats.  *See id.* at 3.

[13]     Olivia Rosane, *More Than Half of Car Safety Seats Tested in U.S. Contain Toxic Chemicals*, ECOWATCH (May 5, 2022) (quoting Arlene Blum, Executive Director of the Green Science Policy Institute, "[p]arents shouldn't have to strap their child into a car seat that exposes them to toxic chemicals"), available at  https://www.ecowatch.com/car-safety-seats-toxic-chemicals.html#:~:text=%E2%80%9CParents%20shouldn't%20have%20to,this%20health%20in equity%20especially%20problematic (last visited June 28, 2022).

(hereinafter, the "car seat" or "KeyFit 30'), and certainly no statement accompanying any of the the advertising or marketing content nor the packaging or label of the KeyFit 30.

13.     Artsana goes out of its way to make it appear to the consuming public that it *only* uses toxic flame retardants to comply with federal flammability standards: From its website:

> ***Chicco performs extensive chemical testing on all our products.*** Independent third-party testing ensures that our products meet rigorous state and federal chemical requirements, including tests for the use of chemicals of concern. ***All our car seats comply with Federal flammability standards, FMVSS 302. This regulatory flammability standard only applies to car seats, therefore all other Chicco products do not use flame retardant chemicals.***[14]

14.     As detailed herein, there is absolutely no requirement that a car seat manufacturer use any chemical whatsoever in order to comply with the federal flammability standard.  Rather, certain car seat companies—Artsana included—use FRs in the manufacture of their car seats because it is significantly cheaper to meet the flammability standard by treating their car seats with FRs as opposed to making the car seats out of natural fibers that would likewise satisfy the federal flammability standard.

15.     Artsana acknowledges as much (that it is possible to manufacture a car seat that complies with federal flammability standards without using potentially toxic chemicals) on its website:

> For added peace of mind, the ClearTex line of car seats complies with FMVSS 302 without the use of added fire retardant

---

[14]     https://www.chiccousa.com/responsible-value-chain/ (last visited June 27, 2022).

chemicals.[15]

16.     Artsana came out with the its ClearTex "line of car seats" in January 2021 when it announced in a press release that it "has innovated again for today's parents, developing a new line of products with fabrics that eliminate the need for added chemicals without compromising safety or comfort."[16]

17.     According to Artsana, its "ClearTex™ car seats use fabrics that comply with federal car safety flammability standards (FMVSS 302) *without any added chemical treatments* [because] ClearTex™ employs an innovative construction of polyester fibers to produce fabrics that are inherently fire-resistant and gentle on baby. All of the components in Artsana ClearTex™ car seats – seat cover, canopy, foam fill, even labels – are free of added chemical treatments, giving parents peace of mind from baby's head to toe."[17]

18.     And, while Artsana wants to be commended for coming out with a flame retardant line of car seats in 2021 (despite being aware of the potential toxicity of these chemicals for years), what it does not say—and has never said—is that prior to the ClearTex line, its car seats were manufactured using toxic flame retardant chemicals.

19.     Artsana is similarly opaque when its comes to disclosing the use of PFAS in its car seat products as it contends that "[a]ll car seats and strollers do not contain *added*

---

[15]     *Id.*

[16]     *See Chicco USA Announces Sustainable **Parenting** Initiative With Focus On Fabrics That Have No Added Chemicals, Are Easier To Clean And Provide Comfort For Baby* (Jan. 14, 2021), available at https://www.prnewswire.com/news-releases/chicco-usa-announces-sustainable-parenting-initiative-with-focus-on-fabrics-that-have-no-added-chemicals-are-easier-to-clean-and-provide-comfort-for-baby-301208712.html (last visited June 28, 2022).

[17]     *Id.* (emphasis added).

perfluorinated compounds, PFAS."[18]

20.     In fact, recent independent testing reveals that Artsana's most popular line—the KeyFit—tested positive for presence of flame retardants in the upholstery and likely contained PFAS.[19]

21.     Plaintiff does not admonish Artsana for making two (or more) different lines of car seats as not all consumers can afford the higher priced non-toxic ClearTex models; however, it is beyond dispute that Artsana should have disclosed to the consuming public that its other lines of car seat, particularly its most popular, the KeyFit, contained FRs and/or PFAS.

22.     If Artsana had disclosed the use of those toxic chemicals, consumers could then make an informed decision: purchase the lower priced car seat that was manufactured and/or treated with toxic chemicals and which may lead to significant health problems for their children **_or_** pay extra for a car seat that does not.[20]

23.     Because Artsana has never disclosed the fact that the KeyFit (and likely many other) lines is made with toxic chemicals, consumers were deprived of the ability to make that informed decision for themselves and their children.

24.     Artsana itself has acknowledged the importance of having car seat products available at different price points; "[w]e understand that the needs and preferences of parents can

---

[18]     *See id.* (emphasis added).

[19]     *See* Bloom, Cooper Sargent, Gearhart & Miller, *Toxic Inequities Report* at 15.

[20]     *See* Tom Perkins, THE GUARDIAN, *Over half of child car seats have toxic flame retardants and PFAS - US study*, at 2 (stating that car seat manufacturers use wool or dense, tightly woven polyester fabric as alternatives to flame retardants, but it is difficult for manufacturers to build and to sell flame retardant free seats for under $100 because the chemicals are cheaper than thick polyester fabrics).

differ and Chicco is committed to the development of fabric technology that pushes boundaries with solutions that deliver comfort for both baby and parent," said William Hasse, Vice President of Marketing for Artsana.[21]

25.      In that same press release, Artsana also praises itself for its its Sustainable Parenting Initiative:

> Chicco's Sustainable Parenting Initiative supports today's parents by offering products that are CLEAR of added chemicals; provide COMFORT with breathable, humidity regulating fabrics; and make it easy for parents to keep the products they rely on most CLEAN. In addition to the Chicco CLEAR line of products being announced today, Chiccos Sustainable Parenting Initiative encompasses several soon-to-be-released products, *as well as existing best-sellers*.[22]

26.      Unfortunately, Artsana has not taken the simple and straight-forward step of disclosing that its existing best selling line of car seats, the KeyFit, contains FRs and likely contains PFAS.[23]

27.      Instead, Artsana has deliberately chosen to mislead consumers by refusing to disclose to consumers that many of its popular car seats contain FRs and/or PFAS, which are known as "forever chemicals" because they are extremely persistent, lasting thousands of years.[24]

---

[21]     *See Chicco USA Announces Sustainable Parenting Initiative With Focus On Fabrics That Have No Added Chemicals, Are Easier To Clean And Provide Comfort For Baby.*

[22]     *See id.* (emphasis added).

[23]     *See, e.g.*,    https://www.chiccousa.com/collection-one/keyfit-30-infant-car-seat---calla/06079679980070.html (proudly proclaiming the KeyFit 30 to be "**The #1-rated Infant Car Seat in America!**") (emphasis in original).

[24]     *See, e.g., PFAS: The Forever Chemicals* (noting that PFAS chemicals have been dubbed 'forever chemicals,' because they are extremely persistent, lasting thousands of years"), available at                             https://www.cleanwateraction.org/features/pfas-forever-chemicals#:~:text=PFAS%20chemicals%20have%20been%20dubbed,has%20PFAS%20in%20t

28.     Artsana's ongoing failure to disclose this basic and very material information certainly calls into question its statement that "[a]ll of us at Chicco are focused on thoughtful, innovative design, making the products families rely on most, better for baby, parents and our environment."[25]

29.     This failure to warn injured consumers, including Plaintiff, who reasonably relied upon Artsana's misleading packaging and marketing materials that did *not* disclose that their car seat products contained FRs and/or harmful PFAS.

30.     Simply put, Artsana does not provide coherent, publicly available information regarding the use of these toxic chemicals in its car seats because it knows that consumers would not purchase its products or if they would purchase, they would pay substantially less for them.

31.     By this lawsuit, Plaintiff is not seeking to require Artsana to completely discontinue use of FRs and PFAS in the manufacture of its car seat products.  Rather, Plaintiff is seeking to compel Artsana to disclose (clearly and unambiguously) its use of FRs and PFAS so that consumers can make an informed decision as to whether to buy a lower-priced car seat that contains FRs and/or PFAS or a higher-priced car seat that does not.

heir%20blood. (last visited June 27, 2022); *see also PFAS Forever Chemicals (also PFOA, PFOS)*, at 1 (stating that PFAS are known as forever chemicals and are linked to a number of health problems including cancer).

[25]     *Id.*

**PARTIES**

32.    Plaintiff Candace Seidl is (and has been at all relevant times) a citizen of Illinois, residing in Warren County, Illinois.

33.    Defendant Artsana USA, Inc. (d/b/a Chicco) is a New Jersey corporation with its principal place of business located at 1826 William Penn Way Lancaster, Pennsylvania 17601.

34.    Artsana USA, Inc. is a multi-specialized parenting brand which manufactures, markets and sells many products via its various business lines, including juvenile, nursing, toys, fashion and baby shoes.[26]

35.    Artsana USA, Inc. is part of the Artsana Group of companies and is owned by Artsana S.p.A, which is an Italian company that makes and sells children's products globally.

**JURISDICTION AND VENUE**

36.    This Court has original jurisdiction pursuant to the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5,000,000, exclusive of interests and costs, there are more than 100 class members and at least one class member is a citizen of a state different from Artsana.

37.    This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

38.    This Court has personal jurisdiction over Artsana because it is headquartered in this District, has regular and systematic contacts with this District and places its products into the stream of commerce from this District, including the car seats purchased by Plaintiff.

39.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Artsana

---

[26]    *See* https://www.artsana.com/brand/chicco/ (last visited June 27, 2022).

maintains its headquarters in this District.

## FACTUAL BACKGROUND

**A.      The Incredibly Competitive & Lucrative Car Seat Restraint System Industry.**

40.      The children's car seat market is a multi-billion dollar industry, conservatively valued at $4.8 Billion in 2020 and projected to reach $7.12 Billion by 2028.[27]

41.      There are many car seat manufacturers—including, but not limited to, Britax, Chicco, Clek, Dorel, Evenflo, Graco, Nuna, Peg Perego and UppaBaby—aggressively competing for those dollars.

42.      Moreover, demand for natural, green and sustainable products has increased exponentially in recent years, and children's car seat restraint systems are no exception.  The growth in consumer spending has been driven by legitimate concerns that consumers have about the contents of the products they use and particularly for products they use for their children and their safety.[28]

43.      This increased awareness and demand has spurred *some* innovation in the car seat industry.[29]  Today, there are about 40 car seat models from 8 companies claiming to be flame-

---

[27]      *See Global Baby Car Seats Market Size By Product (Forward-Facing Car Seat, Booster Seat, Rear-Facing Car Seat), By Application (0-2 Years, 2-4 Years, >4 Years), By Geographic Scope And Forecast*, published by Verified Market Research (May 2022), at 1, available at https://www.verifiedmarketresearch.com/product/baby-car-seats-market/ (last visited June 27, 2022).

[28]      *See, e.g.*, Yasmine Moussa, *The Ultimate Guide to the Best Non-Toxic Car Seats of 2022*, THE GENTLE NURSERY, available at https://www.gentlenursery.com/natural-baby-registry-guide/non-toxic-car-seats/ (last visited June 27, 2022).

[29]      *See* Leah Segedie, *Car Seat Purchasing Guide 2022 - Safest, Non-Toxic Infant & Convertible Car Seats & Boosters*, MAMAVATION (April 20, 2022), available at https://www.mamavation.com/motherhood/safest-non-toxic-infant-convertible-car-seats-babies-

retardant free.[30]

B.     **Artsana's Business.**

44.     The Chicco brand was founded in Italy over 60 years ago by an inventor and developer of pharmaceutical devices named Pietro Catelli.

45.     Since then, Chicco has grown into a global brand with a presence in 120 countries, offering everything from baby gear to nursing, toys, apparel, shoes and baby care products.

46.     Artsana is a division of the global corporation Artsana, S.p.A.  Under the umbrella of the Artsana Group, Chicco, along with its sister brands Boppy, Prenatal and RECARO, purport to offer innovative, quality products designed to enhance the lives of children and their parents.[31]

47.     Artsana, doing business as Chicco, is one of the top-selling manufacturers of car seats, including booster seats, both in the United States and, through its parent corporation, globally.

48.     Chicco's line of car seats is sold under the "Chicco" brand name, and the seats, associated advertising and the product packaging all bear the "Chicco" badge.

49.     Chicco's car seats are mass marketed products that are easy to find at countless retailers online and in retail stores.  Chicco sells its products throughout the country, including, but not limited to, through retail giants Walmart and Target, online via Amazon.com, direct-to-

---

kids.html (last visited June 27, 2022) (noting that such innovation has been spurred by activism and increased consumer awareness).

[30]     *Id.*

[31]     https://www.chiccousa.com/about-our-brand/about-us.html (last visited June 27, 2022).

consumer through its website www.chiccousa.com and many third-party retail websites.

50.     According to Artsana, Chicco has become a household name for parents across the United States thanks to its very popular car seat products like the "#1-rated KeyFit® Infant Car Seat, which has been recognized as the very best for safety, performance and style."[32]

**C.     The Use of Flame Retardants in Car Seat Products.**

51.     In the United States, car seat manufacturers must meet a federal flammability rule designed for vehicle interiors, which was promulgated by the National Highway and Traffic Safety Administration ("NHFTSA") back in 1969.[33]

52.     Perhaps suggestive of the era in which the standard was enacted, that regulation FMVSS 302, *Flammability of Interior Materials*, intends to protect vehicle occupants from fires, particularly those caused by cigarettes.[34]

53.     Starting in 1981, children's car seats were required to comply with FMVSS 302.[35]

54.     NHTSA, the agency responsible for traffic safety, wrote the rule in 1969, yet has never evaluated the effectiveness of the standard as it applies to car seats.[36]

55.     Although FMVSS 302 does ***not*** require the use of any chemicals whatsoever,

---

[32]     *See*       https://www.prnewswire.com/news-releases/chicco-usa-announces-sustainable-parenting-initiative-with-focus-on-fabrics-that-have-no-added-chemicals-are-easier-to-clean-and-provide-comfort-for-baby-301208712.html (last visited June 27, 2022).

[33]     *See* Toxic Inequities Report at 5.

[34]     *See* 49 C.F.R. § 571.302, Standard No. 302, *Flammability of Interior Materials*, available at  https://www.law.cornell.edu/cfr/text/49/571.302 (last visited June 27, 2022).

[35]     *See* https://www.nhtsa.gov/interpretations/nht81-323 (last visited June 27, 2022).

[36]     *See id.*

chemical flame retardants began to be used on children's car seats as an inexpensive way to meet federal flammability standards.[37]

56.     That is, it is cheaper to meet the flammability standard by adding chemical FRs to a product than to use more expensive natural fabrics.[38]

57.     The reason that disclosure of the use of FR chemicals is so vitally important is that most FR chemicals used in products like car seats are not strongly bound to the fabric or foam to which they are added so they easily migrate out and build up in air and dust and then are ingested or absorbed by vulnerable children.[39]

58.     And, the health ramifications are potentially severe as a number of FRs are known endocrine disruptors while some are linked to cancer and many persist and travel in the environment.[40]

59.     Some FRs are called halogenated because they contain chlorine or bromine.[41]

60.     Halogenated FRs can be toxic in the human body and in the environment and can transform to additional toxic byproducts when incinerated.  These chemicals do not break down easily and can persist in the environment for long periods of time, travel long distances and bio-

---

[37]     Toxic Inequities Report at 5.

[38]     *See id.* at 5-6 (noting that because it is cheaper to add FRs to a product than to use more expensive products, the most affordable car seats in the U.S. still contain FRs).

[39]     *See* Toxic Inequities Report at 5.

[40]     *See id.* at 5 (citing Liagkourdis, I., Cousins, A. P. Cousins, I. T., *Physical-chemical properties and evaluative fate modeling of 'emerging' and 'novel' brominated and organophosphorous flame retardants in the indoor and outdoor environment*, SCI. TOTAL ENVIRON. 524-525, 416-426 (2015).

[41]     *See* Toxic Inequities Report at 5.

accumulate in humans and animals.[42]

61.    The use of halogenated FRs (which are frequently banned) has given way to phosphorous-based FRs, which have increased in usage as concerns about halogenated FRs have increased.[43]

**D.    Chicco Affirmatively Misleads the Consuming Public by Falsely Stating that It Use of Potentially Toxic Flame Retardant Chemicals is Mandated by FMVSS 302.**

62.    Artsana, doing business as Chicco, goes out of its way to make it appear to the consuming public that it *only* uses toxic flame retardants to comply with the federal flammability standard:

> ***Chicco performs extensive chemical testing on all our products.*** Independent third-party testing ensures that our products meet rigorous state and federal chemical requirements, including tests for the use of chemicals of concern. ***All our car seats comply with Federal flammability standards, FMVSS 302. This regulatory flammability standard only applies to car seats, therefore all other Chicco products do not use flame retardant chemicals.***[44]

63.    Simply put, there is absolutely no requirement that a car seat manufacturer use any chemical whatsoever in order to comply with the federal flammability standard.

64.    Rather, certain car seat companies—Artsana included—use FRs in the manufacture of their car seats because it is significantly cheaper to meet the flammability standard

---

[42]    *See id.* (citation omitted).

[43]    *See* T.R. Hull, *Environmental Drivers for Replacement of Halogenated Flame Retardants*, POLYMER GREEN FLAME RETARDANTS (2014), available at https://www.sciencedirect.com/topics/earth-and-planetary-sciences/flame-retardant (last visited June 27, 2022).

[44]    https://www.chiccousa.com/responsible-value-chain/ (last visited June 27, 2022).

by treating their car seats with FRs as opposed to making the car seats out of natural fibers that would likewise satisfy the federal flammability standard.[45]

65.    Artsana acknowledges as much (that it is possible to manufacture a car seat that complies with federal flammability standards without using potentially toxic chemicals) on its website:

> For added peace of mind, the ClearTex line of car seats complies with FMVSS 302 without the use of added fire retardant chemicals.[46]

66.    Artsana came out with the its ClearTex "line of car seats" in January 2021 when it announced in a press release that it "has innovated again for today's parents, developing a new line of products with fabrics that eliminate the need for added chemicals without compromising safety or comfort."[47]

67.    According to Artsana, its "ClearTex™ car seats use fabrics that comply with federal car safety flammability standards (FMVSS 302) *without any added chemical treatments* [because] ClearTex™ employs an innovative construction of polyester fibers to produce fabrics that are inherently fire-resistant and gentle on baby. All of the components in Chicco ClearTex™ car seats – seat cover, canopy, foam fill, even labels – are free of added chemical treatments, giving

---

[45]    *See id.* at 5-6 (noting that because it is cheaper to add FRs to a product than to use more expensive products, the most affordable car seats in the U.S. still contain FRs).

[46]    *Id.*

[47]    *See Chicco USA Announces Sustainable **Parenting** Initiative With Focus On Fabrics That Have No Added Chemicals, Are Easier To Clean And Provide Comfort For Baby* (Jan. 14, 2021), available at https://www.prnewswire.com/news-releases/chicco-usa-announces-sustainable-parenting-initiative-with-focus-on-fabrics-that-have-no-added-chemicals-are-easier-to-clean-and-provide-comfort-for-baby-301208712.html (last visited June 28, 2022).

parents peace of mind from baby's head to toe."[48]

68.     And, while Artsana wants to be commended for coming out with a flame retardant line of car seats in 2021 (despite being aware of the potential toxicity of these chemicals for years), what it does not say—and has never said—is that prior to the ClearTex line, its car seats were manufactured using toxic flame retardant chemicals.

69.     Despite what Artsana states, the use of flame retardant chemicals in children's car seats is ***not*** necessary or mandated by FMVSS 302 in any way.

70.     Simply put, there is no such thing as the minimum amount of flame retardant chemicals necessary, as the federal flammability requirement does *not* require car seat manufacturers to use any particular chemical or any chemicals whatsoever in order to be compliant.[49]

**E.     PFAS are Toxic and Pose Substantial Health Risks to Humans and the Environment.**

71.     PFAS refers to a class of human-made, synthetic chemicals that do *not* exist naturally in the environment.  They have been used for decades in industrial processes to enhance the water-, stain- and grease-repellant properites of countless consumer, household and commercial products.

72.     Companies have utilized PFAS to make, among many other things, carpets, clothing, fabrics for furniture, paper packaging for food and other materials such as cookware that are resistant to water, grease or stains.

---

[48]     *Id.* (emphasis added).

[49]     *See generally* 49 C.F.R. § 571.302, Standard No. 302, *Flammability of Interior Materials*, available at  https://www.law.cornell.edu/cfr/text/49/571.302 (last visited June 27, 2022).

73.    All PFAS contain multiple carbon-fluorine bonds, considered one of the strongest in chemistry, making them highly persistent in the environment and in human and animal bodies.

74.    PFAS can be categorized as either "long-chain" or "short-chain" based on the number of carbon atoms they contain.

75.    Long-chain PFAS contain 7 or more carbon atoms, while PFAS containing fewer than 7 carbon atoms are considered short-chain.  Long-chain PFAS, such as perfluorooctanoic acid ("PFOA") and perfluorooctane sulfonate ("PFOS"), have been widely detected in environmental samples, wildlife and humans across the globe.  Long-chain PFAS bio-accumulate and bio-magnify in both humans and in wildlife.

76.    In October 2021, the United States government announced its "PFAS Strategic Roadmap," which is an interagency plan to combat the continued use and release of PFAS.

77.    As part of the Strategic Roadmap, the Environmental Protection Agency ("EPA") committed to designating PFOA and PFOS as "hazardous substances" under the Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"); finalizing a PFAS reporting rule under the Toxic Substances Control Act ("TSCA") section 8(e) and publishing toxicity assessments for 7 widely used PFAS, including the short-chain compounds GenX, PFBA, PFHxA, PFHxS, PFNA and PFDA.

78.    Following announcement of the Strategic Roadmap, a majority of the EPA's Science Advisory Board ("SAB") agreed with the EPA that PFOA is a "likely carcinogen," with some members supporting a more severe designation of "carcinogen." For PFOS, the SAB indicated that the evidence supports a label of "likely carcinogen."

79.    Short-chain PFAS, unfortunately, pose health and safety risks that are similar to their long-chain counterparts.

80.     Short-chain PFAS consist of multiple carbon-fluorine bonds, which, like long-chain PFAS, makes them highly persistent in the environment. They also bio-accumulate in humans and animals.

81.     Short-chain PFAS chemicals are currently used in many industries as a replacement for long-chain PFAS chemicals.

82.     There are no long term studies (as of yet) to indicate whether short-chain PFAS chemicals are in fact safer for consumers; in fact, there are studies to suggest that they pose similar health risks to long-chain PFAS—including bioaccumulation.

83.     Recently, the U.S. Department of Health and Human Services' National Toxicology Program found that short-chain PFAS have the same adverse effects as their long-chain counterparts.

84.     That 2019 study found that both long and short-chain PFAS affected the same organ systems, with the greatest impact seen in the liver and thyroid hormone.

85.     There is no shortage of scientific literature linking these chemicals to cancer and hormone disruption, as well as deficits in motor skills, attention and IQ in children.[50]

86.     A recent New York Times article discussed the effect of PFAS exposure to pregnant women and babies, explaining the effects of PFAS on metabolism and immunity:

> [s]cientists think these widely used industrial chemicals may harm pregnant women and their developing babies by meddling with gene regulators and hormones that control two of the body's most critical functions: metabolism and immunity.

---

[50]     *See,     e.g.,*     https://greensciencepolicy.org/harmful-chemicals/flame-retardants/; https://www.ewg.org/areas-focus/toxic-chemicals/flame-retardants#:~:text=For%20decades%2C%20foam%20furniture%2C%20baby,attention%20and%20IQ%20in%20children. (last visited June 27, 2022).

'And while we understandably focus on highly contaminated communities,' Dr. Lanphear said, 'we can predict, based upon all the other evidence, that there's unlikely to be any safe level.'[51]

87.     The Center for Disease Control's Agency for Toxic Substances and Disease Registry has recognized that exposure to high levels of PFAS may impact the immune system and reduce antibody responses to vaccines.

88.     "The Madrid Statement," a scientific consensus regarding the persistence and potential for harm from PFAS substances, issued by the Green Science Policy Institute and signed by more than 250 scientists from 38 countries, recommended the following actions in order to mitigate future harm: (i) discontinuing use of PFAS where no essential or safer alternatives exist; (ii) labeling products containing PFAS and (iii) encouraging retailers and individual consumers to avoid products containing or manufactured using PFAS whenever possible.

89.     As a result of emerging health and environmental concerns regarding short-chain PFAS, many companies, including North Face and Patagonia, have committed to phasing them out of their products completely.

90.     Humans may be exposed to PFAS through a variety of pathways, including ingestion, inhalation and skin absorption.

91.     Many PFAS, both long and short chain, are toxic to humans at extremely low levels.

92.     Exposure to certain PFAS is associated in the medical and scientific literature with

---

[51]     *See* Liza Gross, *These Everyday Toxins May Be Hurting Pregnant Women and Their Babies, PFAS, industrial chemicals used to waterproof jackets and grease-proof fast food containers, may disrupt pregnancy with lasting effects*, THE NEW YORK TIMES (Oct. 18, 2021), available at https://www.nytimes.com/2020/09/23/parenting/pregnancy/pfas-toxins-chemicals.html (last visited June 27, 2022).

harmful and serious health effects in humans and animals, including, but not limited to,: (i) altered growth; (ii) impacts to learning and behavior of infants and older children; (iii) lowering a woman's chance of getting pregnant; (iv) interference with the body's natural hormones; (v) increased cholesterol levels; (vi) modulation of the immune system; (vii) testicular and kidney cancers; (viii) thyroid disease; (ix) high uric acid levels; (x) elevated liver enzymes; (xi) ulcerative colitis and (xii) pregnancy-induced hypertension.

93.     The International Agency for Research on Cancer ("IARC") has classified PFOA as possibly carcinogenic to humans.

94.     There is also evidence in the scientific literature that PFAS exposure is positively correlated with certain metabolic diseases, such as diabetes, obesity and heart disease.

95.     Researchers have begun to find significant increases of certain short-chain PFAS in the blood of sample populations, raising concerns that short-chain PFAS are assuming the body burden once exclusively occupied by long-chain compounds.

96.     On June 15, 2022, in recognition of the significant health risks posed by long and short-chain PFAS, the EPA issued revised lifetime health advisories for PFOA, PFOS, and the short-chain GenX and PFBS. For PFOA and PFOS, the EPA lowered the health advisory level to 0.004 parts per trillion (ppt) and 0.02 ppt, respectively. For the short-chain compound GenX and PFBS, EPA lowered the advisory levels to 10 ppt and 2,000 ppt, respectively. Each of these advisory levels are very low, meaning the EPA concluded that these contaminants may cause negative human health effects at very low levels.

F.     The Use of PFAS in Car Seat Products.

97.     PFAS encompass a class of chemicals used to make fabrics repellant to water,

grease and stains.[52]

98.     PFAS used for fabric waterproofing are called side-chain polymers.[53]

99.     A polymer "backbone" adheres to fibers in the fabric while PFAS "side chains" along the backbone repel water and oil.[54]

100.     Once those PFAS side chains break free (which they do over time), they pose an exposure hazard to people using the product and additionally can transform in the environment to more stable forms of PFAS that pose known toxic hazards--the notorious forever chemicals.[55]

101.     As noted in the Toxic Inequities Report, the "solution is to eliminate PFAS from children's products.[56]  And, this is easier done than it perhaps may sound as companies can and should make car seat covers removable and washable to avoid the need for stain repellants.[57]

102.     Because the use of PFAS are not disclosed on product labels or in a product's ingredient list, consumers are completely unaware of their personal exposure, as well as their contribution to ecosystem exposures.

**G.     Independent Lab Testing Confirms Presence of Toxic Chemicals in Car Seat Products.**

103.     Overall 55% (12 of 22) of tested U.S. car seats contained flame retardant

---

[52]          *See* Toxic Inequities Report at 7; Hidden Hazards Report at 8.

[53]          Toxic Inequities Report at 7.

[54]          *Id.*

[55]          *Id.* (citations omitted).

[56]          *Id.* at 7.

[57]          *Id.*

chemicals in major components.[58]

104.    All 12 of these seats contained phosphorous-based FRs in the upholstery.[59]

105.    Most FRs detected in car seat upholstery were found in the seats pads (fabric or foam) of 55% of tested U.S. seats (12 of 22).[60]

106.    Other phosphorous based FRs were found; 9% of tested U.S. seats (2 of 22) contained resorcinol diphenyl phosphate and 14% (3 of 22) contained ammonium polyphosphate.[61]

107.    Two U.S. car seats also contained melamine, a persistent chemical with moderate carcinogenicity and endocrine activity that can be used as a flame retardant in the upholstery.[62]

108.    Brominated chemicals at levels suggesting intentional use were found in the upholstery fabrics of 9% of U.S. car seats tested (2 of 22) and in one shade fabric.[63]

109.    Elevated bromine was also found in many minor components such as labels and interfacing fabric.[64]

110.    21% of tested car seats (4 of 19) had water- and stain-resistant fabrics likely containing PFAS, based on testing for total organic fluorine.[65]

---

[58]        *Id.* at 3.

[59]        *Id.*

[60]        *See* Toxic Inequities Report at 12, Table 3.

[61]        *Id*.

[62]        *Id*.

[63]        *Id*.

[64]        *Id*.

[65]        *Id*.

111.    Of the four strollers tested, 2 had likely PFAS, as did their matching car seats.[66]

112.    The hazard ranking of 2021-2022 tested car seats is:



113.    Notably, Chicco's most popular and #1 car seat brand, the KeyFit 30, is identified as a product of "High Concern" because FR or bromine was detected in the upholstery and the product contained elevated levels of fluorine, strongly suggesting the presence of PFAS.

**H.    State Efforts to Address Toxic Flame Retardants and PFAS.**

114.    Over the past decade, several states have enacted maximum contaminant levels regulating certain PFAS, including PFOA and PFOS, in drinking water.

115.    The State of New York was one of the first to recognize that PFAS were harmful to humans and should be regulated. In 2016, it took steps to regulate when and how PFAS could

---

[66]            *Id.*

knowingly be released into the environment, for example for firefighting purposes.[67]

116.      Then, in 2020, New York enacted a law prohibiting the sale of food packaging containing PFAS, effective Dec. 31, 2022.[68]

117.      In October 2020, California passed a law titled the Toxic Free Cosmetics Act, Assembly Bill 2762, that, starting January 1, 2025, will prohibit the manufacturing or selling of any cosmetic product with any intentionally added amount of 24 specified chemicals, including PFAS.

118.      In March 2021, California's Office of Environmental Health Hazard Assessment (OEHHA) released a Notice of Intent to list PFOA as a carcinogen under Proposition 65.  In December 2021, the OEHHA approved the listing of PFOS as a carcinogen under Proposition 65.

119.      California recently passed legislation banning the use of PFAS in paper-based food packaging as well as the disclosure of the presence of PFAS in cookware.[69]  This bill, Assembly Bill 1200, builds off similar food-packaging legislation passed in 2020 in New York.[70]

120.      Similarly, in July of 2021, the State of Connecticut signed a bill into law banning the use of firefighting foam and food packaging that contains PFAS.[71]

--------

[67]      *See* https://www.dec.ny.gov/chemical/108831.html (last visited June 27, 2022).

[68]      *See* https://nyassembly.gov/leg/?default_fld=&leg_video=&bn=S08817&term=2019&Summary=Y (last visited June 27, 2022).

[69]      *See* Avinash Kar, *CA Bill to Reduce Toxic PFAS Exposures Passed by Legislature*, NRDC EXPERT BLOG (Sept. 7, 2021), available at  https://www.nrdc.org/experts/avinash-kar/ca-bill-reduce-toxic-pfas-exposures-passed-legislature (last visited June 27, 2022).

[70]      *Id.*

[71]      *See Governor Lamont Signs Legislation Banning Use Of PFAS-Containing Firefighting Foam in October, Phases Out PFAS-Containing Food Packaging In 2023* (July 20, 2021),

121.    An even broader law was passed in Maine in July 2021 that bans PFAS in nearly all products, stating as of Jan. 1, 2030, "a person may not sell, offer for sale or distribute for sale" in Maine products where PFAS has been "intentionally added" except in cases of "unavoidable use."

122.    In January 2021, Massachusetts passed the Children and Firefighters Protection Act, banning 11 toxic flame retardant chemicals in children's products. All children's car seats manufactured after January 1, 2022 and sold in Massachusetts must comply.

123.    In Pennsylvania, the governor formed a PFAS Action Team in April 2019 that has worked to sample 400 sites across the state for the presence of six PFAS. In March of 2022, the Pennsylvania Department of Environmental Protection proposed regulations that would set a maximum contaminant limit for PFOA in drinking water of 14 ppt and for PFOS in drinking water of 18 ppt.

124.    While there is no comprehensive federal legislation regulating the use of FRs and/or PFAS in consumer products, manufacturers and retailers should disclose the presence of toxic FRs and PFAS so that consumers can make informed purchasing decisions.

I.    **Artsana's Knowledge of the Use of Toxic Chemicals in Its Car Seat Products.**

125.    Artsana has long been well aware of the potential health implications of using FRs and/or PFAS in manufacturing car seats.

126.    Numerous public interest groups have conducted surveys and tests as well as

---

available    at    https://portal.ct.gov/Office-of-the-Governor/News/Press-Releases/2021/07-2021/Governor-Lamont-Signs-Legislation-Banning-Use-Of-PFAS (last visited June 27, 2022).

published reports detailing the use of toxic chemicals, including FRs and PFAS, in car seats for many, many years.[72]

127.     For example, in August 2018, the Ecology Center invited twelve children's car seat companies to complete a Children's Car Seat Corporate Chemical Policy Survey, "the purpose of which was to evaluate their corporate chemical policies and practices."[73]

128.     Unlike its competitors UppaBaby, clek, Britax, Nuna, Peg Perego and Graco, Artsana did not bother to respond.[74]

129.     Moreover, Artsana has exclusive knowledge of the chemicals used to treat the component parts of its car seats, including whether they contained or were at a risk of containing FRs and/or PFAS.

130.     Artsana also has exclusive knowledge of its suppliers and could have obtained information from its suppliers about the contents and treatment of those components, including whether they contained or were at risk of containing FRs and/or PFAS.

131.     Consumers like Plaintiff and the members of the class were unable to determine or identify that Chicco's car seats contained or were at risk of containing FRs and/or PFAS given Artsana's mislabeling and failure to disclose the presence or risk of FRs and/or PFAS.

**J.     Artsana's Lack of Disclosure Regarding Their Use of FRs and PFAS.**

132.     Given the serious potential health ramifications, particularly for vulnerable

---

[72]     *See, e.g.*, Toxic Inequities Report (2022); Transparency Report (2019); Unknown Hazards Report (2018), among many others.

[73]     *See* Transparency Report at 4, Executive Summary.

[74]     *Id.* at 5.

infants and toddlers, companies should be transparent regarding the chemicals used in all manufactured products.[75]

133.    First and foremost, transparency requires that all car seat manufacturers should disclose whether or not their products contain FRs or have been treated with PFAS.[76]

134.    Additionally, car seat manufacturers should have a public chemical statement, a public chemical policy and a public restricted substances list (RSL), and irrespective of particular documents or policies, companies should disclose the use of potentially harmful chemicals in their products.[77]   As detailed below, Artsana falls woefully short with respect to disclosure and transparency.

135.    On its website, Chicco sets forth its public chemical policy as follows:

> *Chicco performs extensive chemical testing on all our products.* Independent third-party testing ensures that our products meet rigorous state and federal chemical requirements, including tests for the use of chemicals of concern. *All our car seats comply with Federal flammability standards, FMVSS 302. This regulatory flammability standard only applies to car seats, therefore all other Chicco products do not use flame retardant chemicals.*[78]
>
> For added peace of mind, the ClearTex line of car seats complies with FMVSS 302 without the use of added fire retardant chemicals. All car seats and strollers do not contain added perfluorinated compounds, PFAS. Our suppliers must adhere to

---

[75]    *See* Transparency Report at 7.

[76]    *See id.* (stating that the Ecology Center and the Healthy Stuff program urge manufacturers to be transparent regarding the chemicals used in all manufactured products).

[77]    *See id.*

[78]    https://www.chiccousa.com/responsible-value-chain/ (last visited June 27, 2022).

our stringent Restricted Substance List for all Chicco products.

136.     There is clearly a significant amount of doublespeak in this two paragraph public chemical policy.  For instance, Chicco implies—falsely—that it is required to use flame retardant chemicals to comply with FMVSS 302 which, as noted above, is clearly not the case

137.     Lest there be any doubt that Chicco is talking out of both sides of its mouth, in the very next sentence, Chicco acknowledges that car seat manufacturers *can* comply with FMVSS 302 *without* using flame retardant chemicals; "[f]or added peace of mind, the ClearTex line of car seats complies with FMVSS 302 without the use of added fire retardant chemicals."

138.     Turning to PFAS, Chicco artfully contends—without any additional discussion—that "[a]ll car seats and strollers do not contain *added* perfluorinated compounds, PFAS,"[79] suggesting to the reasonable consumer that the product is PFAS-free.

**K.     Artsana's Packaging Claims Mislead and Deceive Consumers.**

139.     Chicco's packaging claims its KeyFit line of car seats are safe, and there is absolutely no disclosure that the car seats contain harmful, potentially carcinogenic PFAS compounds and/or FR chemicals.

---

[79]     *See id.* (emphasis added).



140.

141.    The description of the KeyFit 30 from the Chicco website is:

**The #1-rated Infant Car Seat in America!**

The KeyFit® 30 is engineered with innovative features that make it the easiest infant car seat to install simply, accurately and securely – every time.

**Includes Base!**

The lightweight carrier clicks effortlessly into the included-stay-in-car base and compatible Chicco strollers for easy, streamlined travel when you need it most.

**Easiest to Install**

Two RideRight® bubble level-indicators and the ReclineSure® spring-loaded leveling foot help verify and achieve proper angle in the vehicle seat. The base is also equipped with premium LATCH connectors for easy attachment and removal from the lower anchors in the vehicle seat. The one-pull SuperCinch® tightener applies force-multiplying technology for a secure fit with a fraction of the effort.

For installation with the vehicle seat belt, clear belt routing and integrated lock-offs make it easy to position, tighten and lock the belt into place.

**Tailored for Comfort**

The car seat carrier includes removable head and body support to accommodate newborns as small as 4 pounds. A five-point harness with one-pull tightening helps keep baby secure and the carrier shell is lined with EPS energy-absorbing foam for improved impact protection. The large, removable canopy provides shade from the sun and the machine washable seat pad makes cleanup a breeze.

- #1-rated and engineered with innovative features that make it the easiest infant car seat to install correctly
  - Lightweight, 9.5 lb. carrier clicks securely into compatible Chicco strollers
    - 5-point harness with one-pull tightener
  - Premium LATCH connectors for easy attachment & removal
    - SuperCinch® force-multiplying tightener
    - ReclineSure™ spring-loaded leveling foot
      - RideRight™ bubble level-indicators
  - Removable head and body support for newborns weighing 4-11 lbs.
- Carrier shell with EPS energy-absorbing foam for improved impact protection
    - Large, removable canopy and machine washable seat pad

**Usage**

The KeyFit® 30 is designed for infants between 4-30 pounds and up to 30 inches tall.

**Certifications**

This product is <u>JPMA Certified</u>.

**Care and Maintenance**

Machine wash fabrics separately in cold water on delicate cycle. Do not use bleach; drip dry. Refer to the instruction manual for complete care and maintenance instructions.[80]

142.    The specifications page similarly does not disclose the use of FRs and/or PFAS:

Assembled Dimensions (L x W x H): 27.5" x 16.5" x 24"
Assembled Product Weight: 16.5 lbs
Carton Dimensions (L x W x H): 17.5" x 15.25" x 28.25"
Carton Ship Weight: 20 lbs

| | |
|---|---|
| Harness Mode - Rear-Facing | 4-30 lbs |
| Harness Mode - Forward-Facing | n/a |
| Booster Mode - Harness + Booster | n/a |
| Booster Mode - Backless | n/a |
| Rear-Facing Child Max Height Capacity | 30 in |
| Forward-Facing Child Max Height Capacity | n/a |
| Booster Child Height Capacity | n/a |
| LATCH | SuperCinch® |
| Seat Belt Installation | Belt Lock-off |
| Recline Postions | 5 |
| Product Weight | Carrier - 9.5 lbs / Base - 7 lbs |
| Product Total Width | 16.5 in |

---

[80]    *See*              https://www.chiccousa.com/collection-one/keyfit-30-infant-car-seat---calla/06079679980070.html (last visited June 29, 2022).

| | |
|---|---|
| Product Total Height | 24 in |
| Product Depth (Footprint) | 27 in |
| Max Harness Slot Height | 9 in |
| Total Belt-Positioning Clip Height | n/a |
| Product Interior Width (Shoulder) | 10 in |
| Product Interior Width (Hips) | 10.5 in |
| Product Interior Seat Depth | 14 in |
| Product Max Seated Height | 19.5 in |
| Height Adjust Positions | 3 |
| Crotch Positions | 1[81] |

143.    The User Manual for the KeyFit also does not make any such disclosure.[82]

144.    There are *no* disclosures on any third party retailer's website (Amazon, Target, Walmart etc….) that the KeyFit car seat contains harmful toxic chemicals.

145.    These misrepresentations and omissions are misleading to consumers because the car seats do, in fact, contain and/or have a material risk of containing FRs and/or PFAS.

146.    Reasonable consumers, including Plaintiff and the class members, paid a price premium for the car seats because they relied on the accuracy of the disclosures and statements on Chicco's packaging, labels and ingredient list.

---

[81]    *See id.*

[82]    *See*                                 https://www.chiccousa.com/on/demandware.static/-/Sites-chicco_catalog/default/dw8c050de3/images/products/Manuals/car-seats/Chicco-KeyFit-30-Car-Seat-Product-Manual-03-2020.pdf (last visited June 29, 2022).

147.    Reasonable consumers, including Plaintiff and the class members, considered the above packaging claims to be material to their decision to purchase the car seats.

148.    Artsana knew or should have known—yet failed to disclose—that the car seats contained and/or had a material risk of containing FRs and/or PFAS.

149.    Artsana also knew or should have known that the presence or material risk of FRs and/or PFAS were a material consideration to consumers like Plaintiff and the class members when they purchased the car seats.

150.    A reasonable consumer would *not* have paid the price premium for the car seats if they had known that the they contained or had a material risk of containing FRs and/or PFAS.

151.    In fact, reasonable consumers, including Plaintiff and the class members, would have refused to purchase the car seats entirely if they had known that they contained or had a material risk of containing FRs and/or PFAS.

152.    As a result of Artsana's misleading advertising, marketing and packaging claims and omissions, consumers like Plaintiff and the class members suffered substantial financial losses by paying premium prices for the car seats that did not conform to their packaging claims.

**L.      Artsana Acted Negligently and/or Intentionally to Mislead Consumers.**

153.    Artsana acted negligently and/or intentionally to deceive consumers, including Plaintiff and the class members, through its misleading advertising, marketing and packaging claims that did not disclose the presence or risk of FRs and/or PFAS in the car seats.

154.    Artsana did so despite knowing that the presence and/or material risk of FRs and/or PFAS in the car seats, as well as knowing that FRs and/or PFAS could be eliminated from its products.

155.    Artsana knew that consumers like Plaintiff and the class members trusted and

relied on it to ensure that the car seats conformed to their packaging claims and did not contain undisclosed FRs and/or PFAS.

**L.      Consumer Reliance Was Reasonable and Foreseeable.**

156.    Plaintiff and the class members reasonably relied upon Artsana's misleading packaging claims and omissions when making their purchasing decisions.

157.    Any reasonable consumer would consider the advertising, marketing and packaging and labeling of a car seat in making purchasing decisions.

158.    At the time of purchase, Plaintiff and the class members had no opportunity to discover the truth about Artsana's omission of the presence or risk of FRs and/or PFAS in the car seats.

159.    Consumers reasonably relied upon Artsana's misleading packaging and advertising content as objective statements that communicated, represented and advertised that the car seats had specific product characteristics.

160.    Artsana knew or should have known and intended that Plaintiff and the class members would rely on its misleading advertising, marketing and packaging claims.

161.    Artsana designed and had control over the car seats' packaging, labeling and advertising content including omitting information about the use of FRs and/or PFAS in order to target and to induce consumers like Plaintiff and the class members to purchase the car seats at the advertised prices.

162.    Plaintiff and the class members are intended third-party beneficiaries of any implied warranty between Artsana and third party retailers.

163.    Retailers were not intended to be the ultimate consumers of the car seats as any implied warranty that exists was intended to benefit consumers.

## EXPERIENCES OF REPRESENTATIVE PLAINTIFF

164.   Reyling on Artsana's misrepresentations and omissions, Plaintiff Candace Seidl purchased the KeyFit 30 car seat in 2021 directly from Chicco's website.

165.   Prior to purchase, Plaintiff saw and relied upon Artsana's packaging and the component lists for the Chicco KeyFit 30 car seat when making her purchasing decision.

166.   Plaintiff selected the Chicco KeyFit 30 car seat because she believed it was higher quality and a safe car seat.

167.   There was absolutely no disclosure or even mention of FRs and/or PFAS in any of the advertising or marketing materials Plaintiff saw regarding the Chicco KeyFit 30 car seat.

168.   Plaintiff, like other reasonable consumers, reasonably relied on Artsana's packaging, labeling, ingredient list and disclosures (and lack thereof) when deciding to purchase a Chicco car seat.

169.   Plaintiff was unaware that the Chicco car seat that she purchased contained detectable levels of FRs and/or PFAS.

170.   Plaintiff would not have purchased the car seat or would have paid less for it had she known that it contained and/or had a material risk of containing dangerous FRs and/or PFAS.

171.   As a result of Artsana's negligent, reckless and/or knowingly deceptive conduct, Plaintiff was injured by purchasing, at a premium price, a Chicco car seat that was not of the quality and safety promised.

172.   If Plaintiff or the putative class members were to encounter the car seats in the future, they could not reasonably rely on the truthfulness of the packaging and advertising content unless Artsana's packaging, labeling and advertising content corrected the misleading omissions.

## TOLLING AND ESTOPPEL OF STATUTES OF LIMITATIONS

173.    Any applicable statute of limitations has been tolled by Artsana's knowing and active concealment of the presence or risk of toxic chemicals in its car seat procuts and the misrepresentations and omissions alleged herein.

174.    Through no fault or lack of diligence, Plaintiff and members of the class were deceived regarding the car seats and could not reasonably discover that they contained or may contain toxic chemicals.

175.    Plaintiff and members of the class did not discover and did not know of any facts that would have caused a reasonable person to expect that Artsana was concealing the presence or risk of FRs and/or PFAS in the car seats.

176.    As alleged herein, the presence or risk of FRs and/or PFAS in the car seats was material to Plaintiff and the class members at all relevant times.

177.    Within the time period of any applicable statute of limitations, Plaintiff and the class members would not have discovered through the exercise of reasonable diligence that the car seats contain or may contain toxic chemicals.

178.    At all times, Artsana is and was under a continuous duty to disclose to Plaintiff and the class members the true standard, quality and grade of the car seats and to disclose the presence or risk of FRs and/or PFAS due to its exclusive and superior knowledge of the contents and ingredient sourcing for its car seats.

179.    Artsana knowingly, actively and affirmatively concealed the facts alleged herein as it wanted to be able to market and to sell lower-priced car seats but did not want to inform the consuming public that those car seats were manufactured using certain toxic chemicals.

180.    Plaintiff and the class members reasonably relied on Artsana's knowing, active

and affirmative concealment.

181.     For these reasons, all applicable statutes of limitation have been tolled based on the discovery rule and Artsana's fraudulent concealment.  And, Artsana is estopped from relying on any statues of limitations in defense of this class action lawsuit.

182.     Artsana has had actual knowledge for several years that the marketing, advertising, packaging and labeling of their car seats was deceptive and misleading because numerous studies have been published detailing the potential harm attendant with the use of certain toxic chemicals in car seat products.[83]

183.     Thus, at all relevant times, Artsana knew that it was concealing and misrepresenting material facts and knew of the considerable dangers and potential health risks  posed  by  the car seats but continued to tout the safety of these products in its advertising, marketing and packaging materials.

184.     Plaintiff's and other class members' claims are not time barred.

## CLASS ACTION ALLEGATIONS

185.     Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the classes defined herein.

186.     This action satisfies the requirements set forth in Rule 23(a) and Rule 23(b)(3).

187.     Plaintiff brings this action on behalf of the following class(es) (together referred to as the "Class"):

> **Nationwide Class:** All individuals in the United States who purchased the car seats from 2019 to the present and/or

> **Illinois Subclass:** All individuals in the State of Illinois who purchased

---

[83]     *See, e.g.*, Toxic Inequities Report (2022); Transparency Report (2019); Unknown Hazards Report (2018), among many others.

the car seats from 2019 to the present.

188.     Excluded from the Class are Artsana, its legal representatives, assigns and successors and any entity in which Artsana has a controlling interest.

189.     Also excluded is the judge to whom this case is assigned and any member of the judge's immediate family and judicial staff.

190.     Claims for personal injury are specifically excluded from the Class.

191.     This action is brought and may be properly maintained as a class action as there is a well-defined community of interests in this litigation and the members of the Class are readily ascertainable.

192.     **Numerosity (Rule 23(a)(1))**: Although the actual number of class members is presently unknown, Plaintiff believes, based on investigation to date, that the Class is comprised of thousands of purchasers of Chicco car seats thereby making joinder wholly impracticable. The disposition of the claims of the class members in a single action will provide substantial benefits to the parties and the Court.

193.     **Commonality (Rule 23(a)(2))**: Questions of law and fact common to Plaintiff and the Class include, but are not limited to, the following:

    a.   Whether Artsana owed a duty of care to Plaintiff and the Class;

    b.   Whether the car seats contained detectable levels of FRs and/or PFAS;

    c.   Whether Artsana knew or should have known that the car seats contained detectable levels of FRs and/or PFAS not disclosed on the product label and/or packaging;

    d.   Whether Artsana failed to test, or require its suppliers to test, the car seats and their ingredients for the presence of FRs and/or PFAS;

    e.   Whether Artsana failed to disclose that the car seats contained FRs and/or PFAS;

    f.   Whether Artsana wrongfully represented that the car seats were safe for use and did not include toxic chemicals;

g.  Whether Artsana wrongfully represented and continues to represent that the car seats are safe for use by babies, infants, toddlers and young children;

h.  Whether reasonable consumers would consider that car seats containing detectable levels of FRs and/or PFAS to be a material fact in making a purchasing decision;

i.  Whether Artsana continued to manufacture, to market, to advertise and to sell the car seats despite knowing that they contain detectable levels of FRs and/or PFAS;

j.  Whether Artsana's omission of the presence of FRs and/or PFAS in the car seats was likely to mislead, deceive, confuse or confound consumers acting reasonably;

k.  Whether Artsana engaged in deceptive acts and practices;

l.  Whether Artsana engaged in false advertising;

m.  Whether Artsana unjustly enriched itself at consumers' expense;

n.  Whether Plaintiff and the class members are entitled to actual, statutory and treble damages and

o.  Whether Plaintiff and the Class are entitled to declaratory and injunctive relief.

194.    **Typicality (Rule 23(a)(3)):** The claims of the representative Plaintiff are typical of the claims of members of the Class in that the representative Plaintiff, like all members of the Class, purchased the car seats from Artsana (either directly or indirectly) without knowing that they contained detectable levels of FRs and/or PFAS and, if Plaintiff, like all members of the Class, had known that information, she would not have purchased the products or would have paid less for them. Thus, the representative Plaintiff, like all members of the Class, has suffered a common injury. The factual basis of Artsana's misconduct is common to all members of the Class.

195.    **Adequacy (Rule 23(a)(4)):** Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff has retained counsel with substantial experience in prosecuting consumer class actions, including actions involving mislabeling and false advertising, product liability and violation of consumer protection statutes. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the Class and have the

financial resources to do so. Neither Plaintiff nor her counsel have any interests adverse to those of the Class.

196.    **Predominance of Common Questions (Rule 23(b)(3))**: Common questions of law and fact predominate over any questions involving individualized analysis. There are no fundamental questions of fact or law that are not common to members of the Class. The undisclosed presence of FRs and/or PFAS in the car seats is a common question as is Artsana's knowledge regarding the presence of detectable levels of FRs and/or PFAS in its car seats and Artsana's uniform omission to members of the Class of this material fact. Common questions of law include whether Artsana's conduct violates various state consumer protection statutes and other laws as well as the Class members' entitlement to damages and other remedies.

197.    **Superiority (Rule 23(b)(3))**: Plaintiff and members of the Class have suffered and will continue to suffer harm and damages as a result of Artsana's unlawful and wrongful conduct. A class action is superior to other available methods for the fair and efficient adjudication of this controversy. Most members of the Class likely would find the cost of litigating their individual claims to be unduly prohibitive and will have no adequate remedy at law. Thus, absent a class action, members of the Class will continue to incur damages and Artsana's misconduct will continue unabated and without remedy.

198.    Class treatment of common questions of fact and law is superior to multiple individual actions or piecemeal litigation because it will conserve the resources of this (and other courts if individual actions proceed) court and the litigants and promote consistency and efficiency of adjudication. There is no impediment to the management of this action as a class action because the questions of fact and law are virtually identical for Plaintiff and all members of the Class.

199.    **Injunctive Relief (Rule 23(b)(2)):** Artsana has engaged in, and continues to engage in, business practices which are unfair and fraudulent by, among other things, failing to disclose the material fact that its car seats contain detectable levels of FRs and/or PFAS. Plaintiff seeks class-wide injunctive relief on grounds consistent with the standards articulated in Rule 23(b)(2) that establish final injunctive relief as an appropriate class-wide remedy because, here, Artsana continues to manufacture, market, advertise and sell the car seats and omit material facts regarding their use of toxic chemicals in those products. The injuries suffered by Plaintiff and the Class as a result of Artsana's actions are ongoing.

### PENNSYLVANIA LAW SHOULD APPLY WITH THE EXCEPTION OF CERTAIN SPECIFIED SUB-CLASSES

200.    The Commonwealth of Pennsylvania has a significant interest in regulating the conduct of businesses operating within its borders.

201.    Pennsylvania, which seeks to protect the rights and interests of Pennsylvania and all residents and citizens of the United States against a company headquartered and doing business in Pennsylvania, has a greater interest in the claims of Plaintiff and the Class than any other state and is most intimately concerned with the claims and outcome of this litigation.

202.    The principal place of business and headquarters of Artsana, located in Lancaster, Pennsylvania**,** is the "nerve center" of its business activities – the place where its high-level officers direct, control and coordinate their activities, including but not limited to, major policy, financial and legal decisions.

203.    Upon information and good faith belief, Artsana's actions and corporate decisions surrounding the allegations herein were made from and in Lancaster, Pennsylvania.

204.    Application of Pennsylvania law to Plaintiff's and the Class' claims is neither arbitrary nor fundamentally unfair because Pennsylvania has significant contacts and a

significant aggregation of contacts that create a state interest in those claims.

205.     Under Pennsylvania choice of law principles, which are applicable to this action, the common law of Pennsylvania applies to the nationwide common law claims of all Class members.

206.     Additionally, given Pennsylvania's significant interest in regulating the conduct of businesses operating within its borders and that Pennsylvania has the most significant relationship to Artsana, there is no conflict in applying Pennsylvania law to non-resident consumers such as Plaintiff and the Classes.

## CAUSES OF ACTION

## COUNT I

## VIOLATION OF THE PENNSYLVANIA UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW
### (On Behalf of Plaintiff and the Nationwide Class)

207.     Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully set forth herein.

208.     Plaintiff asserts this claim for violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law on behalf of herself and the Nationwide Class.

209.     Artsana, Plaintiff, and the Nationwide Class members are "persons" within the meaning of 73 Pa. Cons. Stat. § 201-2(2).

210.     Plaintiff and the Nationwide Class members purchased the subject car seats primarily for personal, family or household purposes within the meaning of 73 Pa. Cons. Stat. § 201-9.2(a).

211.     Artsana was and is engaged in "trade" or "commerce" within the meaning of 73 Pa. Cons. Stat. § 201-2(3).

212.     The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("Pennsylvania CPL") prohibits "unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" 73 Pa. Cons. Stat. § 201-3.

213.     In the course of its business, Artsana, through its agents, employees and/or subsidiaries, violated the Pennsylvania CPL by knowingly and intentionally misrepresenting, omitting, concealing and failing to disclose material facts regarding the reliability, safety and performance of the car seats, as detailed herein.

214.     Specifically, by misrepresenting the car seats as safe and made of high quality materials and by failing to disclose and actively concealing the dangers and risks posed by the use of toxic chemicals in the manufacture of the car seats, Artsana engaged in one or more of the following unfair or deceptive business practices prohibited by 73 Pa. Cons. Stat. § 201-2(3):

    a.     Representing that the car seats have characteristics, uses, benefits and qualities that they do not have;

    b.     Representing that the car seats are of a particular standard, quality and grade when they are not;

    c.     Advertising the car seats with the intent not to sell them as advertised and

    d.     Engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding.

73 Pa. Cons. Stat. § 201-2(4)(v), (vii), (ix) and (xxi).

215.     Artsana's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions, and suppressions of material facts, had a tendency or capacity to mislead and create a false impression in consumers, and were likely to and did in fact deceive reasonable consumers, including Plaintiff and the Nationwide Class members, about the true quality, safety and value of the car seats.

216.     Artsana's scheme and concealment of the true characteristics of the car seats

45

were material to Plaintiff and the Nationwide Class members, as Artsana intended.  Had they

known the truth, Plaintiff and the Nationwide Class members would not have purchased the car

seats or would not have paid as much for them.

217.    Plaintiff and the Nationwide Class members had no way of discerning that

Artsana's representations were false and misleading or otherwise learning the facts that Artsana

had concealed or failed to disclose.  Plaintiff and the Nationwide Class members did not, and

could not, unravel Artsana's deception on their own.

218.    Artsana had an ongoing duty to Plaintiff and the Nationwide Class members to

refrain from unfair and deceptive practices under the Pennsylvania CPL in the course of its

business.  Specifically, Artsana owed Plaintiff and the Nationwide Class members a duty to

disclose all the material facts concerning the car seats because Artsana possessed exclusive

knowledge, intentionally concealed the true characteristics of the car seats from Plaintiff and the

Nationwide Class members and/or made misrepresentations that were rendered misleading

because they were contradicted by withheld facts.

219.    Plaintiff and the Nationwide Class members suffered ascertainable loss and

actual damages as a direct and proximate result of Artsana's concealment, misrepresentations

and/or failure to disclose material information.

220.    Artsana's violations present a continuing risk to Plaintiff and the Nationwide

Class members, as well as to the general public as Artsana's unlawful acts and practices

complained of herein affect the public interest.

221.    Pursuant to 73 Pa. Cons. Stat. § 201-9.2(a), Plaintiff and the Nationwide Class

members seek an order enjoining Artsana's unfair or deceptive acts or practices and awarding

damages and any other just and proper relief available under the Pennsylvania CPL.

## COUNT II

### COMMON LAW FRAUD - OMISSION
**(On Behalf of Plaintiff and the Nationwide Class
and, in the Alternative, the State Subclasses)**

222.     Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully set forth herein.

223.     Plaintiff asserts this claim against Artsana for common law fraud on a concealment theory on behalf of herself and members of the Nationwide Class (and the State Subclasses).

224.     Artsana made pervasive and consistent statements regarding the safety of the car seats and the specifications that concealed, suppressed, omitted and otherwise failed to disclose material facts necessary to make those statements not misleading.

225.     As detailed herein, Artsana's statements describing the equipment and features of the car seats in labels, packaging, owners' manuals, warranty booklets, product brochures, advertisements and other promotional materials were misleading because they did not disclose the fact that the car seats were manufacturied using toxic chemicals.

226.     These concealed and suppressed facts were material because a reasonable consumer would deem information regarding the potential toxicity of a product designed to protect the health and safety of vulnerable infants, babies, toddlers and young children to be disclosed.

227.     A reasonable consumer would rely on those facts in deciding whether to purchase a car seat as there is no shortage of car seat manufacturers with many of those car seats specifically manufactured without the use of potentially harmful toxic chemicals.

228.     Simply put, whether a given car seat manufacturer's products are safe and and made of high quality materials free from toxic chemicals are material concerns to a consumer.

229.     Plaintiff and Class Members did not know that the car seats purchased were manufactured with toxic chemicals that could potentially cause serious health issues in their young children.

230.     Nor could Plaintiff and the Class Members have discovered these concealed facts through reasonably diligent investigation.

231.     Artsana has a duty to disclose the truth regarding the safety and potential toxicity of its car seats because the use and safety of car seats has a direct impact on the health and safety of the children who occupy them.

232.     This duty arose from the fact that Artsana:

- Had exclusive and/or far superior knowledge and access to material, suppressed facts regarding the manufacture of their car seats, including, but not limited to, the use of any toxic chemicals;

- Had exclusive and/or far superior knowledge and access to material, suppressed facts regarding the use by any supplier or distributor of any component parts of their car seats, including, but not limited to, whether those suppliers used any toxic chemicals in the making of those components;

- Affirmatively and intentionally concealed the material facts from Plaintiff and Class Members and

- Affirmatively and intentionally concealed many, if not all, of their policies with respect to the use of toxic chemicals in their car seat products

233.     Plaintiff and each class member decided to buy a car seat based, at least in part, on Artsana's representations as to the safety, testing and specifications of the car seats, none of which disclosed the use of toxic chemicals.

234.     Artsana intended that their omissions of material fact would deceive or mislead Plaintiff and members of the Nationwide class (and the State Subclasses), and induce them to

purchase their car seats.

235.    Plaintiff and members of the Nationwide Class (and the State Subclasses) justifiably relied on Artsana's omissions of material facts regarding the car seats, as described herein.

236.    Artsana's omissions of material facts directly and proximately caused the damages suffered by Plaintiff and members of the Nationwide Class (and the State Subclasses).

237.    As a result of Artsana's omissions of material facts, Plaintiff and members of the Nationwide Class (and the State Subclasses) have been damaged in an amount to be proven at trial.

238.    Artsana's conduct showed malice, motive and a reckless disregard of the truth such that an award of punitive damages is appropriate.

239.    Because Artsana's deceptive and unfair conduct is ongoing, injunctive relief is necessary and proper.

**COUNT III**

**NEGLIGENT MISREPRESENTATION**
**(On Behalf of Plaintiff and the Nationwide Class**
**and, in the Alternative, the State Subclasses)**

240.    Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully set forth herein.

241.    Plaintiff asserts this claim against Artsana for common law negligent misrepresentation on behalf of herself and members of the Nationwide Class (and the State Subclasses).

242.    During the Class Period, Artsana represented to the public via their websites, in marketing materials and advertising content, as well as the labeling and packaging of the car seats that the products were safe, thoroughly tested and fit for use by young children.

243.    Artsana's representations were material to the purchasing decisions of Plaintiff and Class members.

244.    Plaintiff relied on Artsana's misrepresentations in purchasing and using the car seats.

245.    At the time of sale, Artsana should have known that its representations about the safety and quality of the car seats were false.

246.    Based on these representations of material fact, Artsana had a duty to disclose the truth about the safety characteristics, including, but not limited to, the potential toxicity of the car seats due to the use of certain FRs and/or PFAS in the manufacture of the car seats.

247.    Despite this duty, Artsana failed to exercise reasonable care or competence in communicating information regarding the use of certain potentially toxic chemicals in the manufacture of their car seats.

248.     These misrepresentations were made uniformly to the consuming public, including Plaintiff and members of the Class.

249.     Plaintiff and members of the Class relied on Artsana's misrepresentations and would not have purchased and/or owned a Chicco car seat had Artsana not made the misrepresentations about their design, manufacture, safety, quality and testing.

250.     As a result of Artsana's negligent misrepresentations concerning the car seats, Plaintiff and members of the Class have been damaged.

**COUNT IV**

**BREACH OF EXPRESS WARRANTY**
**(On Behalf of Plaintiff and the Nationwide Class**
**and, in the Alternative, the State Subclasses)**

251.     Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully set forth herein.

252.     Plaintiff asserts this claim against Artsana for breach of express warranty on behalf of herself and members of the Nationwide Class (and the State Subclasses).

253.     In connection with sale of its car seats, Artsana, by and through statements in labels, packaging and ingredient lists and other written materials intended for consumers and the general public, made certain express affirmations of fact and/or promises relating to its car seats to Plaintiff and the Class, as alleged herein, including that such seats were safe to use and fit to be used for their intended purpose.

254.     These express affirmations of fact and/or promises include ingredient lists and labels that purport to attest to the safety and quality of the car seats but fail to include that the car seats contained and/or were manufactured using certain toxic chemicals including FRs and/or PFAS.

51

255.     Artsana advertised, labeled, marketed and promoted the car seats with such express affirmations of fact and/or promises in such a way as to induce Plaintiff and members of the Class to purchase and to use the car seats thereby making an express warranty that the car seats would conform to the representations of being safe and of high quality.

256.     Artsana's affirmations of fact and/or promises about the car seats, as set forth herein, constituted affirmations of fact or promises made by the seller to the buyer, which related to the goods and became part of the basis of the bargain.

257.     Despite the express warranties it created with respect to the car seats, Artsana delivered car seats to Plaintiff and the members of the Class that did not conform to Artsana's express warranties in that such car seats were defective, dangerous and unfit for use, did not contain labels adequately representing the nature of the risks associated with their use and were not merchantable or safe for their intended, ordinary and foreseeable use and purpose.

258.     Specifically, Artsana breached the express warranties by representing through its labeling, advertising and marketing materials that its car seats were safe and of high quality, and intentionally withheld information about the car seats containing detectable levels of FRs and/or PFAS and the risks associated with use of these toxic chemicals, particularly on products used by vulnerable young children.

259.     Plaintiff and the members of the Class relied on Artsana's express promises and representations that the car seats were safe to use and fit to be used for their intended purpose as warranted on the labels, packaging, advertising and marketing content.

260.     Artsana had sole and exclusive access to material facts concerning the manufacture of their car seats, including, but not limited to, their supplier lists and whether they and/or their suppliers treated the car seats with toxic chemicals.

261.     Artsana therefore had sole and exclusive knowledge of the nature of the risks associated with the use of its car seats and knew that consumers and purchasers, such as Plaintiff and class members, could not have reasonably discovered that the statements expressly included in the advertising and marketing materials, as well as the packaging and labeling of the car seats were inadequate, incomplete and therefore inaccurate.

262.     Plaintiff and each member of the Class have had sufficient direct dealings with Artsana and/ot its agents (including distributors, dealers and authorized sellers) to establish privity of contract between Artsana and Plaintiff and each member of the Class.

263.     As a direct and proximate result of Artsana's breaches of express warranties, as alleged herein, Plaintiff and the Class sustained economic loss in an amount to be proven at trial.

264.     As a result of Artsana's breaches of express warranties, as alleged herein, Plaintiff and the members of the Class seek an order awarding compensatory damages and any other just and proper relief available under the law.

## COUNT V

### BREACH OF IMPLIED WARRANTY
### (On Behalf of Plaintiff and the Nationwide Class
### and, in the Alternative, the State Subclasses)

265.     Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully set forth herein.

266.     Plaintiff asserts this claim against Artsana for breach of implied warranty on behalf of herself and members of the Nationwide Class (and the State Subclasses).

267.     At all relevant times, Artsana was a merchant of car seats that were sold to Plaintiff and members of the Class, and was in the business of manufacturing, marketing, promoting and selling such products to the consuming public.

268.     As detailed herein, Artsana designed, manufactured, developed and sold the car seats knowing that Plaintiff and Class members would purchase and use them to secure their young children.

269.     Each car seat sold by Artsana comes with an implied warranty that it will be merchantable and fit for the ordinary purpose for which it would be used.

270.     Artsana expected the consuming public, including Plaintiff and Class members, to purchase and to use the car seats and such purchase and use was reasonably foreseeable.

271.     And, Plaintiff and the members of the Class expected the car seats to be useable and to perform in a manner consistent with their packaging, labeling and advertising material.

272.     Artsana breached their implied warranty of merchantability because the car seats were not in merchantable condition when sold because they contain or have a material risk of containing dangerous FRs and/or PFAS.

273.     Artsana's car seats are not fit for the ordinary purpose for which they were sold because they contain or have a material risk of containing dangerous FRs and/or PFAS.

274.     Artsana did not properly disclaim the warranty of merchantability and fitness for a particular purpose.

275.     Plaintiff and Class members were injured as a direct and proximate result of Artsana's breaches of implied warranties of merchantability.

276.     Plaintiff and Class members were damaged as a result of Artsana's breaches of implied warranties of merchantability because, had they been aware of the unmerchantable condition of the car seats, they would not have purchased them or if they had purchased, they would have done so at much lower prices.

277.     As a result of Artsana's breaches of implied warranties of merchantability, as

alleged herein, Plaintiff and the Class seek an order awarding compensatory damages and any other just and proper relief available under the law.

## COUNT VI

### UNJUST ENRICHMENT
### (On Behalf of Plaintiff and the Nationwide Class
### and, in the Alternative, the State Subclasses)

278.    Plaintiff incorporates by reference each and every prior and subsequent allegation of this Complaint as if fully set forth herein.

279.    Plaintiff brings this count on behalf of herself and members of the Nationwide Class (and the State Subclasses).

280.    Artsana knowingly accepted and enjoyed the benefits of Plaintiff and Class members purchasing or causing the purchase of their car seats.

281.    Artsana should not be able to retain the benefit of the funds paid because Plaintiff and the Class members rendered payment with the expectation that the car seats would be as represented and warranted—a well-designed and high quality product that was thoroughly tested and intended to protect the health and safety of young children.

282.    Artsana misrepresented and omitted material facts regarding the actual dangers posed by the use of toxic chemicals in the manufacture of the car seats.

283.    Through those misrepresentations and omissions, Plaintiff and Class members purchased Chicco car seats and Artsana profited therefrom.

284.    As the intended and expected result of their conscious wrongdoing, Artsana has profited and benefited from Plaintiff's and Class members' purchases of the car seats.

285.    Irrespective of the specific retailer involved, Plaintiff's and Class members' payments for the car seats flowed to Artsana.

286.     Artsana voluntarily accepted and retained these profits and benefits derived from Plaintiff and the Class with full knowledge and awareness that, as a result of their misconduct, Plaintiff and the Class were not receiving products of the quality, nature, fitness or value that had been represented by Artsana and that Plaintiff and the Class, as reasonable consumers, expected.

287.     If Plaintiff and Class members knew the car seats were not safe and contained FRs and/or PFAS as alleged herein, they would not have purchased them.

288.     Artsana has been unjustly enriched by its fraudulent and deceptive withholding of benefits to their customers at the expense of Plaintiff and the members of the Class.

289.     Artsana profited from Plaintiff's purchases and used Plaintiff and Class members' monetary payments for business purposes.

290.     Artsana's retention of these profits and benefits is inequitable and violates notions of equity and good conscience.

291.     As a direct and proximate result of Artsana's unjust enrichment, Plaintiff and the members of the Class suffered injury and seek the disgorgement and restitution of Artsana's wrongful profits, revenue and benefits, plus interest, to the extent and in the amount deemed appropriate by the Court, as well as all such other relief as the Court deems just and proper to remedy Artsana's unjust enrichment.

292.     Equity dictates that Artsana's ill-gotten gains be disgorged and that the Plaintiff and members of the Classes are entitled to restitution.

## COUNT VII

**VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT**
**815 Ill. Comp. Stat. 505/1, *et seq.***
**(On Behalf of Plaintiff and the Illinois Subclass)**

293.     Plaintiff incorporates by reference each and every prior and subsequent allegation

of this Complaint as if fully set forth herein.

294.     Plaintiff brings this claim on behalf of herself and the Illinois Subclass against Artsana.

295.     Artsana, Plaintiff and the Illinois Subclass members are "persons" within the meaning of 815 ILCS 505/1(c).

296.     Plaintiff and Illinois Subclass members are "consumers" within the meaning of 815 ILCS 505/1(e).

297.     The car seats in question are "merchandise" within the meaning of 815 ILCS 505/1(b).

298.     Artsana was and is engaged in "trade" and "commerce" within the meaning of 815 ILCS 505/1(f).

299.     The Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois CFDBPA") prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices[.]" 815 ILCS 505/2.

300.     In the course of its business, Artsana, its agents, employees and/or subsidiaries, violated the Illinois CFDBPA by knowingly and intentionally misrepresenting, omitting, concealing and failing to disclose material facts regarding the safety of the car seats, as detailed above.

301.     Specifically, Artsana made the following misrepresentations and omissions, among others:

     i.     Misrepresenting that the car seats were safe for their intended use;

     ii.     Representing to consumers that when it uses FR, it only does so to comply with federal flammability

standards;

iii.   Claiming that it does not add PFAS to any car seat or stroller, including the KeyFit 30, which leaves the misleading impression that no PFAS is present in these products; and

iv.   Refusing to disclose that car seats, including the KeyFit 30, includes and/or are likely to include FR and/or PFAs.

302.   Artsana's representations were false and misleading because it did not disclose that the car seats were manufactured using certain toxic chemicals, and that those toxic chemicals could cause a host of serious and debilitating health consequences, and that young children were particularly vulnerable to ingesting and/or absorbing these toxic chemicals.

303.   Specifically, by misrepresenting the car seats' manufacturing and safety, and by failing to disclose and actively concealing the dangers and risks posed by the car seats, Artsana engaged in one or more of the following unfair or deceptive business practices prohibited by 815 ILCS 505/2 and 510/2:

i.   Causing likelihood of confusion or of misunderstanding as to the approval or certification of the car seats;

ii.   Representing that the car seats have approval, characteristics, uses or benefits that they do not have;

iii.   Representing that the car seats are of a particular standard, quality and grade when they are not;

iv.   Advertising the car seats with the intent not to sell them as advertised;

v.   Engaging in other conduct which created a likelihood of confusion or of misunderstanding and/or

vi.   Using or employing deception, fraud, false pretense, false promise or misrepresentation, or the concealment, suppression or omission of a material fact with intent that others rely upon such concealment, suppression or omission, in connection with the advertisement and sale of the car seats,

> whether or not any person has in fact been misled,
> deceived or damaged thereby.

815 ILCS 505/2 and 815 ILCS 510/2.

304.     Artsana's unfair or deceptive acts or practices, including misrepresentations, concealments, omissions and suppressions of material facts, had a tendency or capacity to mislead and to create a false impression in consumers and were likely to and did, in fact, deceive reasonable consumers, including Plaintiff and Illinois Subclass members, about the true safety and reliability of the car seats, the quality of the car seats and the true value of the car seats.

305.     Artsana's scheme and concealment of the true characteristics of the car seats were material to Plaintiff and Illinois Subclass members, as Artsana intended.

306.     Had they known the truth, Plaintiff and Illinois Subclass members would not have purchased the car seats or would have paid significantly less for them.

307.     Plaintiff and Illinois Subclass members had no way of discerning that Artsana's representations were false and misleading or otherwise learning the facts that Artsana had concealed or failed to disclose.

308.     Plaintiff and Illinois Subclass members did not and could not unravel Artsana's deception on their own.

309.     Artsana had an ongoing duty to Plaintiff and Illinois Subclass members to refrain from unfair or deceptive practices under the Illinois CFDBPA in the course of its business.

310.     Specifically, Artsana owed to Plaintiff and Illinois Subclass members a duty to disclose all the material facts concerning the true characteristics of the car seats because Artsana possessed exclusive knowledge, intentionally concealed true characteristics of the car seats from the Illinois Plaintiff and Illinois Subclass members and/or made misrepresentations that were rendered misleading because they were contradicted by withheld facts.

311.     The Illinois Plaintiff and the Illinois Subclass members suffered ascertainable loss and actual damages as a direct and proximate result of Artsana's concealment, misrepresentations and/or failure to disclose material information.

312.     Artsana's violations present a continuing risk to the Illinois Plaintiff and Illinois Subclass members, as well as to the general public.

313.     Artsana's unlawful  acts and practices complained of herein affect the public interest.

314.     Pursuant to 815 ILCS 505/10a, the Illinois Plaintiff and Illinois Subclass members seek an order enjoining Artsana's unfair or deceptive acts or practices and awarding damages and any other just and proper relief available under the Illinois CFDBPA.

315.     A copy of this complaint was mailed to the Attorney General of the State of Illinois in accordance with 815 ILCS 505/10a.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Candace Hart Seidl respectfully requests this Honorable Court to enter judgment against Artsana and in favor of Plaintiff, and to award the following relief:

a)     Certification of the Class with Plaintiff appointed as class representative of the specified classes and the undersigned appointed as Class Counsel;

b)     Find that Artsana engaged in the unlawful conduct as alleged herein and enjoin Artsana from engaging in such conduct;

c)     Enter a monetary judgment in favor of Plaintiff and the Class to compensate them for the injuries suffered, together with pre-judgment and post-judgment interest, punitive damages and penalties where appropriate;

d)     Injunctive relief requiring Artsana disclose the true nature of the car seats, including that they contain and/or have a material risk of containing FRs

and/or PFAS;

e)      A declaration that Artsana must disgorge, for the benefit of the Class, all or part of its ill-gotten profits received from the sale of the car seats;

f)      An award of all actual, general, special, incidental, statutory, treble or other multiple, punitive and consequential damages under statutory and common law as alleged in this Complaint, in an amount to be determined at trial;

g)      Award Plaintiff reasonable attorneys' fees, costs and expenses as permitted and authorized by law and

h)      Award such other and further relief as this Court may deem just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury.


Dated: August 4, 2022                           Respectfully submitted,

                                         s/ Nancy M. Christensen
                                        Nancy M. Christensen (PA Bar No. 325564)
                                        James Bilsborrow (*pro hac vice* forthcoming)
                                        **WEITZ & LUXENBERG, PC**
                                        700 Broadway
                                        New York, NY 10003
                                        Phone: (212) 558-5500
                                        nchristensen@weitzlux.com
                                        jbilsborrow@weitzlux.com

                                        *Attorneys for Plaintiff & the Putative Classes*

**CERTIFICATE OF SERVICE**

I hereby certify on this 4th day of August, 2022, the foregoing document was filed through the Electronic Filing System of the United States District Court for the Eastern District of Pennsylvania and will be served electronically by the Court to all counsel of record.

/s/ Nancy Christensen